**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**FREDERICK J. MILLER,**

                **Plaintiff,**　　　　　　　**7:12-cv-375
　　　　　　　　　　　　　　　　　　　　　　　　(GLS)**

        **v.**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Olinsky Law Group<br>300 S. State Street<br>5th Floor, Suite 520<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| Legal Aid Society<br>of Northeast New York<br>55 Colvin Avenue<br>Albany, NY 12206 | MICHAEL J. TELFER, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | ANDREEA L. LECHLEITNER<br>Special Assistant U.S. Attorney |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II | |

26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Frederick J. Miller challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI) and seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Miller's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On October 28, 2008, Miller filed an application for SSI under the Social Security Act ("the Act"), alleging disability since January 1, 2005. (*See* Tr.[1] at 50, 96-102.) After his application was denied, (*see id.* at 53-60), Miller requested a hearing before an Administrative Law Judge (ALJ), which was held on June 3, 2010, (*see id.* at 24-49, 61-63). On October 18,

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 9.)

2

2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 1-3, 8-23.)

Miller commenced the present action by filing his Complaint on February 29, 2012 wherein he sought review of the Commissioner's determination.  (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 7, 9.)  Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 13, 14.)

### III.  Contentions

Miller contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (*See* Dkt. No. 13 at 10-22.)  Specifically, Miller claims that the ALJ: (1)  rendered an inaccurate residual functional capacity (RFC); (2) improperly evaluated his credibility; (3) erred in determining at step four that he could perform his past relevant work; and (4) erred at step five.  (*See id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is supported by substantial evidence.  (*See* Dkt. No. 14 at 7-17.)

3

## IV. Facts

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 13 at 2-8; Dkt. No. 14 at 1-2.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

First, Miller contends that the ALJ's RFC determination is unsupported by substantial evidence and the product of legal error. (*See* Dkt. No. 13 at 10-16; Dkt. No. 17 at 1-4.) In particular, Miller argues that the ALJ erred in weighing the opinion evidence of consultative examiner

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) of Title 42 applicable to judicial review of SSI claims.

James Naughten and non-examining medical expert Charles Plotz. (*See id.*) The Commissioner counters, and the court agrees, that the ALJ properly weighed the opinion evidence and his RFC determination is supported by substantial evidence. (*See id.* at 7-12.)

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence[3] in the record. *See Frye ex rel. A.O. v. Astrue*, No. 11-1585-cv, 2012 WL 2125910, at *2 (2d. Cir. June 13, 2012). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, Dr. Naughten examined Miller and opined that "he may have moderate to possibly even severe limitations for lifting, carrying, and handling objects." (Tr. at 244; see *id.* at 240-43, 245-50.) The ALJ gave this opinion little weight because it was based on Miller's complaints of

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

"back and neck arthritis, encephalitis, head injury and respiratory arrest, none of which are evidenced by the medical record." (*Id.* at 16.) Dr. Naughten further opined that Miller had a "[m]oderate limitation for walking, climbing stairs, pushing, pulling, and reaching." (*Id.* at 244.)  The ALJ also gave this opinion little weight because, although Dr. Naughten did not specify which of Miller's impairments caused such limitations, there were no abnormal findings that would implicate those limitations and, further, a stress echocardiogram indicated normal functional aerobic capacity. (*See id.* at 16-17.)  Lastly, Dr. Naughten opined that Miller should "avoid all known smoke, dust, and respiratory irritants due to his asthma and emphysema." (*Id.* at 244.)  The ALJ gave this opinion "some weight" because objective medical evidence of record indicated that Miller suffered respiratory impairments, however, spirometry tests indicated only early obstructive pulmonary impairment and Miller continued to smoke cigarettes. (*Id.* at 17.)

According to Miller, the ALJ erred in not affording "great weight" to all of Dr. Naughten's opinion. (Dkt. No. 13 at 10-15.)  Miller claims that Dr. Naughten's findings were supported by his examination, including Miller's complaints of pain, as well as the medical findings and diagnoses in the

6

record.  (*See id.* at 10-11, 13-15.)  It is true that Dr. Naughten's exam revealed restricted range of motion in Miller's neck and lumbar spine and straight leg raising was positive at five degrees.  (*See* Tr. at 242-43.)  However, Miller had full range of motion of his shoulders, elbows, forearms and wrists bilaterally, 4/5 strength in all of his extremities, physiological and equal deep tendon reflexes, no motor deficit, no muscle atrophy, intact hand and finger dexterity, and 4/5 grip strength.  (*See id.* at 243.)  Further, x-rays of Miller's lumbar and cervical spine revealed no abnormalities and a pulmonary function test was normal.  (*See id.* at 245-47.)  In addition to his own findings, the objective medical evidence throughout Miller's treatment history does not support Dr. Naughten's restrictive opinion.

 In January 2005, an x-ray of Miller's thoracic spine showed mild degenerative changes, a CT scan of his thoracic spine showed a bony fragment suggestive of an old trauma, and an x-ray of his lumbar spine revealed "[m]ild wedging of L1."  (*Id.* at 148-49.)  In November 2004, an x-ray of Miller's lumbar spine was negative and a June 2005 MRI of his lumbar spine showed a "[s]mall, central disc protrusion" at L5/S1, but was otherwise unremarkable.  (*Id.* at 156, *see id.* at 166.)  In October 2008, an x-ray of Miller's cervical spine revealed no fracture or dislocation, but

7

showed mild degenerative changes.  (*See id.* at 151.)  The record also contains several CT scans of Miller's head and an MRI and MRA of his brain, all of which were normal.  (*See id.* at 153-54, 162, 164, 206.)  Chest x-rays were normal in January 2005, August 2006, and August 2007.  (*See id.* at 152, 155, 165.)  In August 2006, a pulmonary function report revealed possible early obstructive pulmonary impairment. (*See id.* at 178.) Finally, a stress echocardiogram, performed in June 2010, revealed that Miller possessed "normal functional aerobic capacity."  (*Id.* at 373.)

    Based on a review of the entire record, Dr. Plotz opined that Miller could frequently lift and carry up to twenty pounds and occasionally fifty pounds and, in an eight-hour work day, sit for eight hours, stand for six hours, and walk for six hours.  (*See id.* at 390-91.)  Dr. Plotz also opined that Miller could reach, handle, finger, feel, push, and pull, as well as climb, balance, stoop, kneel, crouch, and crawl frequently.  (*See id.* at 392-93.) With respect to environmental limitations, Dr. Plotz opined that Miller could tolerate only occasional exposure to dust, odors, fumes, and pulmonary irritants.  (*See id.* at 394.)  Dr. Plotz also reviewed the records relating to Miller's visual impairment, including records from Miller's consultative eye exam, and opined that Miller suffered a mild visual impairment in his left

eye, but remained able to avoid ordinary hazards in the workplace, read very small print, read ordinary print, view a computer screen, and determine differences in shape and color of small objects.  (*See id.* at 252-58, 279, 393.)

Based on the foregoing, the ALJ's decision to give greater weight to the opinion of Dr. Plotz is supported by substantial evidence.  Miller argues that the ALJ erred in faulting Dr. Naughten for not explicitly stating what impairments caused Miller's walking, climbing, pushing, pulling and reaching limitations.  (*See* Dkt. No. 13 at 11-12.)  This argument is without merit.  Notably, "[t]he better an explanation a source provides for an opinion, the more weight [the Commissioner] will give that opinion."  20 C.F.R. § 416.927(c)(3).  Moreover, the ALJ properly discounted Dr. Naughten's opinion because it was not supported by the objective medical evidence.  Further, the ALJ did not "'arbitrarily substitute his own judgment for competent medical opinion,'" but, rather, "'resolve[d] issues of credibility as to lay testimony [and chose] between properly submitted medical opinions.'"  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.

9

1983)).[4]  Finally, Miller's claim that the ALJ must have improperly given Dr. Plotz's opinion controlling weight because it is identical to the ALJ's RFC assessment, is also meritless.  (*See* Dkt. No. 13 at 16.)  The ALJ properly considered all of the opinion evidence of record and stated that he was giving Dr. Plotz's opinion "considerable evidentiary weight" because, unlike Dr. Naughten, Dr. Plotz had the opportunity to review the complete medical record and, moreover, his opinion was consistent with the objective evidence of record.  (*Id.* at 17.)  Ultimately, the RFC is supported by substantial evidence and will not be disturbed.

B.  **Credibility Assessment**

Next, Miller argues that the ALJ failed to apply the appropriate legal standards in assessing his credibility.  (*See* Dkt. No. 13 at 16-18.)  Specifically, Miller claims that the ALJ failed to consider certain limitations

---

[4] Miller argues that the ALJ improperly discounted Dr. Naughten's opinion as to the effects of Miller's asthma and emphasyma on his ability to function, in part, because Miller continues to smoke cigarettes.  (*See* Dkt. No. 13 at 12.)  However, Dr. Naughten's opinion was based on Miller's subjective complaints, and not his clinical findings.  (*See* Tr. at 241-43, 247.)  An ALJ can properly consider a claimant's failure to quit smoking as impacting on the credibility of his complaints of disabling respiratory problems.  *See Goff v. Astrue*, No. 09-CV-1392, 2012 WL 1605574, at *11 (N.D.N.Y. May 8, 2012).  However, "a claimant's failure to quit smoking will generally be an unreliable basis on which to rest a credibility determination," due to the addictive nature of smoking.  *Id.* at *11-12 (internal quotation marks and citations omitted).  Here, the objective medical evidence and the opinion of Dr. Plotz were inconsistent with Miller's claims of disabling respiratory difficulties.  (*See* Tr. at 394, 396.)  Thus, the ALJ's consideration of Miller's failure to quit smoking, along with all the other evidence of record, is not a basis for remand.

10

on his activities of daily living, the location, duration, and frequency of his pain and other symptoms, and the side effects of his medication. (*See id.* at 17-18.) On the other hand, the Commissioner argues that the ALJ properly evaluated Miller's credibility. (*See* Dkt. No. 14 at 12-15.) Again, the court agrees with the Commissioner.

Once the ALJ determines that a claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and

11

side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 416.929(c)(3)(i)-(vi)).

Relying principally on inconsistencies between Miller's subjective complaints and the objective medical evidence, as well as the assessment of Dr. Plotz, and the fact that Miller continued to smoke, the ALJ determined that those complaints were not entirely credible. (*See* Tr. at 16-17.) Although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 416.929(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted). Here, the ALJ explicitly acknowledged consideration of the 20 C.F.R. § 416.929 factors. (*See* Tr. at 15); *Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the

claimant's credibility).

Moreover, the ALJ's determination that Miller's subjective complaints were not fully credible is supported by substantial evidence. (*See* Tr. at 16.) Miller's activities of daily living included taking care of his personal hygiene, cooking and preparing food, doing light general cleaning, including laundry, and shopping. (*See id.* at 261-62.) Further, Miller reported drawing, painting, engraving, doing wood burning, listening to music, watching television and "some fishing and other outdoor activities." (*Id.* at 354, *see id.* at 262.) In addition, August 2009 psychiatric treatment notes indicate that Miller "t[ook] very good care" of a pet dog. (*Id.* at 323.) Miller also reported that he never wore eyeglasses. (*See id.* at 253.)

C.   **Step Four Determination**

Miller also claims that the ALJ's finding that he could perform his past relevant work is unsupported by substantial evidence and is the product of legal error. (*See* Dkt. No. 13 at 18-21.) According to Miller, the ALJ's step four determination is infirm because: (1) the ALJ erred in determining his RFC and credibility; (2) Miller's earnings in his prior positions did not meet substantial gainful activity levels and, thus, could not be considered past relevant work; and (3) the ALJ failed to make the required findings of fact.

13

(*See id.*)  The Commissioner concedes that the record is unclear as to whether Miller's prior positions met substantial gainful activity levels.[5]  (*See* Dkt. No. 14 at 15-16.)  However, the Commissioner argues that any error at step four is harmless because the ALJ made an alternate and correct finding at step five, that Miller could perform other work that existed in significant numbers in the national economy.  (*See id.* at 16-17.)

As the Commissioner correctly points out, a deficiency in an ALJ's step-four analysis does not require remand if the ALJ subsequently made a correct ruling at step five.  *See Johnson v. Astrue*, No. 07-CV-647, 2009 WL 1650415, at *6 (W.D.N.Y. June 12, 2009) (explaining that failure to properly examine past relevant work is harmless when ALJ makes a correct ruling at step five).  Here, at step five, the ALJ ruled that, given Miller's age, education, work experience, and RFC, the Medical-Vocational Guidelines directed a finding that Miller was not disabled, since he was able to perform other readily available work.  (*See* Tr. at 18 (relying on 20

---

[5] For prior employment to be considered past relevant work the job must qualify as substantial gainful activity.  *See* 20 C.F.R. § 416.965(a); SSR 82-62, 1982 WL 31386, at *1-2 (1982).  In making the determination as to whether work activity rises to the level of substantial gainful activity, the Commissioner considers the nature of the work, how well the claimant performed the work, if the work was performed under special conditions, if the work constituted self-employment, and the time spent doing the work.  S*ee* 20 C.F.R. § 416.973.  Here, the ALJ found that Miller could perform his past relevant work as a cashier, laborer, food server, and dishwasher.  (*See* Tr. at 17.)

14

C.F.R. pt. 404, subpt. P, App. 2, § 203.28).)  Therefore, the court must address Miller's allegations with respect to errors at step five.

## D. Step Five Determination

Miller contends that the ALJ's step five determination is unsupported by substantial evidence and the product of legal error because the ALJ: (1) erred in developing Miller's RFC and assessing his credibility; and (2) failed to obtain the testimony of a vocational expert.  (*See* Dkt. No. 13 at 21-22; Dkt. No. 17 at 5.)  The Commissioner counters, and the court agrees, that because the ALJ found that Miller could perform the full range of medium work, reliance on the medical-vocational guidlines was appropriate.  (*See* Dkt. No. 14 at 16-17.)

In making a step-five ruling, an ALJ may rely on the Medical-Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P, App. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines.  *See* 20 C.F.R. § 416.969; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009).  However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status

because they fail to take into account claimant's nonexertional impairments." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)). In that case, the ALJ should consult with a vocational expert before making a determination as to disability. *See Id.* Notably, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Id.* at 603. Instead, exclusive reliance on the grids will only be deemed inappropriate where the non-exertional impairments *"significantly* limit the range of work permitted by his exertional limitations." *Id.* at 605 (emphasis added) (internal quotation marks and citation omitted).

Here, as discussed above, the ALJ's RFC determination and credibility assessment are supported by substantial evidence. Thus, Miller's arguments with respect to limitations not included in the ALJ's RFC determination are meritless. (*See* Dkt. No. 13 at 22.)[6] Further, although

---

[6] In addition to the limitations opined by Dr. Naughten and discussed above, (*see supra* Part VI.A), Miller claims that the ALJ failed to consider the opinion of consultative examiner Jeanne Shapiro that Miller "appears to be incapable of managing money because he states that he is unable to do so." (Dkt. No. 13 at 22; Tr. at 262.) However, the ALJ's decision that Miller did not suffer from any medically determinable mental impairment is supported by substantial evidence. (*See* Tr. at 14.) Upon examination, Dr. Shapiro found that, among other things, Miller's speech was intelligible and fluent, thought processes were coherent and goal directed, sensorium was clear, attention and concentration were intact, recent and remote memory skills were intact, and intellectual functioning was in the average range. (*See id.* at

the ALJ found that Miller suffered from a visual impairment, he determined that Miller did not suffer from any nonexertional limitations due to that impairment. (*See* Tr. at 15.) Thus, the ALJ's reliance on the Medical-Vocational Guidelines was appropriate.

### E.     Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Miller's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

April 24, 2013
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court

---

261.) According to Dr. Shapiro, the results of the examination were inconsistent with Miller's allegations and, further, his reported psychiatric symptoms did not warrant a formal diagnosis. (*See id.* at 262.)